IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DIONNE JONES-WALSH | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 04 C 6029 |
| TOWN OF CICERO, | ) ) ) |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Dionne Jones-Walsh has sued her former employer, the Town of Cicero, Illinois, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5 for sexual harassment and retaliation. Jones-Walsh claims that a co-worker repeatedly harassed her from September 1999 to June 2000 and that Cicero fired her on June 29, 2000 because she complained about the harassment to a supervisor on June 28. Cicero has moved for summary judgment. For the following reasons, the Court grants the motion in part and denies it in part.

### Facts

In September 1999, Jones-Walsh began working for the Town of Cicero as an auxiliary police officer. The job required her to issue parking tickets, direct traffic, and accompany full-time police officers on calls. She claims that shortly after the job began, Jerold Rodish, a Cicero police officer, began sexually harassing her on a daily basis by discussing where and how he would like to perform sex with her. Jones-Walsh told Rodish that she was not interested and was

1

already in a relationship, but the harassment persisted nonetheless. Jones-Walsh claims that she threatened to complain about the behavior, but Rodish told her that he was not worried because his "Uncle Eddie" Vrdolyak, a leading political figure in Cicero and relative of Rodish, would take care of him.

In February 2000, Cicero's Town President, Betty Loren-Maltese, appointed Jones-Walsh to a newly created position called the Director of Senior Services. In that capacity, she managed a division of municipal government described by statute as follows:

a. *Appointment.* There is created the office of director of senior services who shall be the head of and responsible for the department of senior services and who shall be appointed by the town president with the advice and consent of the town board.

b. *Powers and Duties Generally.* The director of senior services shall, in accordance with this article, have the management and control of all matters relating to the department of senior services, its operations, and its personnel, subject to approval of the president.

The Department of Senior Services shall provide informational and other services to senior citizen residents of the Town. Such services shall include, but shall not be limited to:

(1) Providing information on educational programs for senior citizens;

(2) Supplying information on suitable senior housing and aiding senior citizens in efforts to obtain suitable housing;

(3) Furnishing nutritional materials to senior citizens;

(4) Providing information about accessible forms of transportation;

(5) Organizing recreational activities and programs for senior citizens; and

(6) Educating senior citizens on health care issues and available programs.

CICERO, IL, CODE § 2-226 to 28 (2000). The department also staffed a handyman to provide seniors with free fix-up jobs. The Cicero Board of Trustees confirmed Jones-Walsh to her new position around March 1, 2000, and she began work immediately, reporting directly to Loren-Maltese. When Jones-Walsh had time off from the Senior Services job, she continued to

volunteer as an unpaid auxiliary police officer (though she did so only twice), and she kept her badge and gun.

Jones-Walsh says that Rodish continued to harass her with obscene phone calls and personal requests even after she began her new job. Around June 1, Jones-Walsh finally complained to Rodish's supervisor, Deputy Superintendent of Police Larry Dominick, who told her he would take care of the problem. He spoke with Rodish, who denied the allegations, and told Rodish to stop bothering Jones-Walsh. Dominick did not investigate the veracity of Jones-Walsh's complaint. When, according to Jones-Walsh, the harassment persisted, she complained twice more to Dominick, once on June 26 and once on June 28. After the last complaint, according to Jones-Walsh, Dominick told her, "I'm sorry, our hands are tied. We've tried to talk to him," and he said that he could discipline Rodish only with Vrdolyak's approval. Jones-Walsh responded that she would take legal action unless the harassment stopped. The next day, Loren-Maltese called Jones-Walsh into her office and fired her from the Director of Senior Services position. Cicero claims it terminated Jones-Walsh because of job poor performance.

Two days after her termination as Director of Senior Services, Jones-Walsh went to the auxiliary police office to request additional hours. The supervisors in that department told her to turn in her badge and gun because she had failed to meet the minimum number of hours to remain in the program.

## Discussion

On a motion for summary judgment, the court is required to consider all evidence and draw all inferences in favor of Jones-Walsh, the non-moving party in this case. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must look at the evidence

"as a jury might, construing the record in the light most favorable to the nonmovant and avoiding the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

1.  **Sexual Harassment**

Cicero argues that Jones-Walsh's sexual harassment claim cannot withstand summary judgment for two reasons. First, it argues that events occurring after March 1, 2000 are barred from Jones-Walsh's claim because the Director of Senior Services position was exempt from Title VII coverage. Cicero then argues that events occurring between Sept. 1999 and March 1, 2000, a time period when it employed Jones-Walsh as an auxiliary police officer, are barred because Jones-Walsh failed to properly notify Cicero of the harassment. The Court examines each argument in turn.

In any Title VII case the plaintiff must, as a preliminary matter, establish that she is the defendant's employee and that she is the type of employee the Act protects. 42 U.S.C. 2000e(f). Title VII defines an employee as "an individual employed by an employer, except that the term 'employee' shall not include any person elected to public office in any State or political subdivision. . . or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level." *Id.* The Seventh Circuit has held that reasons underlying a position's exemption from the First Amendment's prohibition on political-based firing apply equally to this Title VII exemption. *Heck v. City of Freeport*, 985 F.2d 305, 310 (7th Cir. 1993).

To determine whether a particular position is at the policy-making level, a court examines the powers inherent in a given office as it is described by law rather than the actual functions the occupant of that office performed. *Id.* The test is whether the position "authorizes, either

directly or indirectly, meaningful input into governmental decisionmaking on issues where there is room for principled disagreement on goals or their implementation." *Tomczak v. City of Chicago*, 765 F.2d 633, 641 (7th Cir. 1985) (quoting *Nekolny v. Painter*, 653 F.2d 1164, 1170 (7th Cir. 1981)). This determination often presents a difficult factual determination that ordinarily should be left to a jury. *Nekolny*, 653 F.2d at 1169.

In *Nekolny*, the Seventh Circuit held that the trial court erred in deciding as a matter of law that the plaintiff, the former Senior Citizens Coordinator of Lyons Township, did not hold a policymaking position for purposes of the ban on political firing. The position required the plaintiff to conduct feasibility studies and other research concerning the nature and extent of programs for senior citizens and direct proposals to the Township Supervisor and Board of Auditors. He was also one of the four highest paid employees in the Township. Despite this evidence, the court said that the issue of whether the position was a policymaking one was best resolved by a jury.

In *Heck*, the court upheld a trial court's grant of summary judgment and held that the general inspector of a city's health department was not an employee for purposes of Title VII. The plaintiff was the highest ranking individual in the health department, supervised the garbage pick-up for the city, and made arrests for public health violations. The court said that these facts supported summary judgment for the defendant municipality because "those responsible for the provision of basic services like police and fire protection, as well as 'quasi-utility functions' like water, garbage, and sewage services are crucial positions of trust and accountability." *Id*; *see also Bicanic v. McDermott*, 867 F.2d 391, 394 (7th Cir. 1989) (holding that Director of Parks and Recreation is a policymaker because he creates budgets and negotiates contracts for the city);

5

*Tomczak v. City of Chicago*, 765 F.2d 633, 642 (7th Cir. 1985) (holding that Chicago Deputy Commissioner of the Department of Water is exempt from political firing ban).

Cicero insists that Jones-Walsh was a policy-maker because, like the plaintiff in *Heck*, she was appointed by the Town President with the consent of the Town Board, was one of several department heads in the city, and had management and control over the duties listed in the municipal ordinance. Cicero also maintains that the relationship between a city and its senior citizens is very important when it comes to election time, certainly as important as garbage disposal or crime prevention. Though it is true that senior citizens are an important part of a politician's constituency, *Nekolny* held that a jury had to resolve the issue of whether a person holding a very similar position – Senior Citizens Coordinator – was a policymaker. Also, unlike the jobs discussed in *Heck* and *Tomczak*, Jones-Walsh's Senior Services job did not involve supervision of the provision of basic city services, nor did it involve budgeting and contract-making, two important elements discussed in *Bicanic*. Instead, the Senior Services Department distributed information and organized various social events, duties that may not have resulted in "principled disagreement on goals or their implementation." *Nekolny*, 653 F.2d at 1170. In short, the issue is genuinely disputed and best resolved by a jury.

Cicero also argues that the Court should bar Jones-Walsh's claims insofar as they relate to events predating March 1, 2000 because Jones-Walsh cannot demonstrate that Cicero was negligent in discovering sexual harassment. *See Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1014 (7th Cir. 1997) (dismissing plaintiff's Title VII hostile environment claim because she failed to complain about harassment while she was an employee). This argument, however, gets Cicero nowhere in light of the Court's ruling that a jury reasonably could find that Jones-Walsh

6

was a Cicero employee from March 1 - June 29. If Jones-Walsh was an employee when she complained about sexual harassment, then her pre-March 1 claims are not barred. If she presents evidence from which a jury reasonably could find that the harassment was sufficiently severe and that Cicero was negligent in remedying the hostile environment, she is entitled to a trial. *See Loughman v. Malnati Organization Inc.*, 395 F.3d 404, 407 (7th Cir. 2005). Cicero does not contest that Jones-Walsh has presented such evidence.

A final note with regard to Jones-Walsh's hostile environment claim concerns her employment status as an auxiliary police officer. Jones-Walsh argues that even if her Director of Senior Services position was at the policymaking level, thus excluding her from Title VII protection, Title VII nevertheless protects her from sex discrimination as an auxiliary police officer. Though the Court has already decided that a jury could reasonably find that the Senior Services position was not at the policymaking level, it is possible that a jury ultimately will find otherwise. It is important, then, that we address whether Title VII separately protects Jones-Walsh's auxiliary police officer position.

Cicero argues that Jones-Walsh was not still employed her as an auxiliary police officer when she complained about Rodish's harassment. It points to Jones-Walsh's deposition, in which she admitted that when she took the Senior Services position, she worked as an auxiliary police officer on a volunteer basis. Jones-Walsh Dep. at 120. In response, Jones-Walsh cites Cicero's answer in which it admitted that "on July 1, 2000, Defendant Town of Cicero terminated Plaintiff from her position as an auxiliary police officer." Def. Answer ¶ 16. The Court finds that despite Cicero's admission, there is no genuine dispute that Jones-Walsh was at most a volunteer on the day she was terminated. Workers who do not receive any form of

compensation are not protected by Title VII. *O'Connor v. Davis*, 126 F.3d 112, 116 (2d Cir. 1997); *Haavistola v. Cmty. Fire Co. of Rising Sun, Inc.*, 6 F.3d 211, 220 (4th Cir. 1993).

### 2. Retaliation

A plaintiff alleging retaliation can survive a motion for summary judgment by presenting direct or indirect evidence from which a jury reasonably could find that she suffered an adverse employment action because of protected activity. *Stone v. City of Indianapolis Pub. Util. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). Under the direct method, which is the only one relevant here, the employee must demonstrate that she engaged in protected activity and suffered an adverse employment action as a result. *Id.* There is no bright-line rule as to the amount of evidence necessary to establish a causal link under the direct method, but temporal proximity by itself is not enough. *See Culver v. Gorman & Co.*, 416 F.3d 540, 546 (7th Cir. 2005); *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 981 (7th Cir. 2004).

The parties disagree whether Jones-Walsh engaged in protected activity when she complained to Superintendent Dominick instead of invoking the Town's formal process for making such complaints. Cicero cites *Durkin v. City of Chicago*, 341 F.3d 606, 612 (7th Cir. 1999), for the proposition that informal complaints to a supervisor do not constitute protected activity where the employee fails to use the employer's formal complaint procedure. In *Durkin*, however, the court held that the plaintiff's complaints were "vague and concerned subjects other than harassment" and thus insufficient to notify her employer of a Title VII violation. Here, by contrast, Jones-Walsh's alleged complaints unambiguously related to harassment in the workplace. Thus, *Durkin* does not control this case.

The Court has found no Seventh Circuit case that directly addresses whether an

8

employee's informal complaints to a supervisor about Title VII violations constitute protected activity. *See Rhodes v. Ill. Dept. of Transp.*, 359 F.3d 498, 508 (7th Cir. 2004) (declining to resolve whether informal complaint to supervisor constitutes protected activity). However, other circuits have done so and agree that such complaints are protected. *See Pastran v. K-Mart Corp.*, 210 F.3d 1201 (10th Cir. 2001); *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 495, 506 (9th Cir. 2000); *Rollins v. State of Fla. Dept. of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989); *Armstrong v. Index Journal Co.*, 647 F.2d 441, 448 (4th Cir. 1981). *See also Walls v. Turano Baking Co.*, 221 F. Supp. 2d 924, 931 (N.D. Ill. 1998) (Bucklo, J.).

In *Armstrong*, the court described its rationale for protecting an employee's informal complaints as follows: "'[C]ourts have in each case to balance the purpose of the Act to protect persons engaging reasonably in activities opposing sexual discrimination, against Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel.'" 647 F.2d at 448 (quoting *Hochstadt v. Worcester Found. for Experimental Biology*, 545 F.2d 222, 231 (1st Cir. 1976)). The court said that an employee's non-disruptive disapproval of her employer's discriminatory practices did little to tie her employer's hands and that protection of such activity furthered Congressional intent. *Id.* Here, Jones-Walsh made similarly non-disruptive complaints to Dominick. The Court agrees with the rationale in *Armstrong* and holds that a jury reasonably could find that her complaints constitute protected activity.

Because there is no dispute that Jones-Walsh suffered an adverse employment action, we next determine whether there was a sufficient evidence of a causal link between her complaint and the subsequent termination. Though temporal proximity is ordinarily not enough to show causation, "it is often an evidentiary ally of the plaintiff." *Lalvani v. Cook County*, 259 F.3d 785,

790 (7th Cir. 2001). Here, in addition to the short one day time period between complaint and termination, there is other evidence that would permit a jury to reasonably find causation. *See Culver v. Gorman & Co.*, 416 F.3d 540, 645 (7th Cir. 2005). Specifically, when Jones-Walsh made her third and final complaint, she claims Dominick said that he could not do anything about Rodish's behavior because Rodish was related to Ed Vrdolyak. A jury reasonably could find that given Rodish's purported political ties, Cicero believed that firing Jones-Walsh was the best way to end its sexual harassment problem. This fact, in addition to the very close temporal proximity between complaint and termination, is enough for a reasonable jury to find causation.

Because Jones has established a *prima facie* case, the burden shifts to Cicero to put forth a non-discriminatory reason for its adverse employment action. Cicero says that it fired Jones-Walsh for poor job performance. Thus, Jones-Walsh must put forth evidence from which a jury reasonably could find that Cicero's reason was pretextual, or not honest. *Culver*, 416 F.3d at 547. Temporal proximity, though not sufficient standing alone, is evidence of pretext. *Pugh v. City of Attica*, 259 F.3d 621, 629 (7th Cir. 2001). Because Cicero fired Jones-Walsh one day after she engaged in protected activity, Jones-Walsh can demonstrate pretext if she presents some additional evidence that casts doubt on Cicero's proffered reason. The same evidence that supports a finding of causation supports a finding of pretext. A jury reasonably could find, given Dominick's alleged statements about Rodish's political connections and Dominick's alleged refusal to remedy an atmosphere of sexual harassment in the workplace, that Cicero fired Jones-Walsh not because of poor performance, but to sweep under the rug her complaint about a politically connected employee. *See Hawkins v. Hennepin Technical Center*, 900 F.2d 153, 156 (8th Cir. 1990) ("an atmosphere of condoned sexual harassment in a workplace increases the

10

likelihood of retaliation for complaints in individual cases").

## CONCLUSION

For the foregoing reasons, the Court grant's Town of Cicero's motion for summary judgment in part and denies it in part [docket no. 20]. Defendant is entitled to summary judgment on Jones-Walsh's sexual harassment claim to the extent it is based on her purported continued employment as an auxiliary police officer. Defendant's motion is otherwise denied. The date for filing the final pretrial order is extended to 10/21/05. The case is set for status hearing on 9/22/05 at 9:30 a.m. for the purpose of discussing the possibility of settlement.

                                                                            _____
                                                                            MATTHEW F. KENNELLY
                                                                            United States District Judge

Date: September 14, 2005